THOMAS P. O'BRIEN
United States Attorney
CHRISTINE EWELL
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS A. AXEL (CA Bar No. 173814)
Assistant United States Attorney
Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-5420
    Facsimile:  (213) 894-0689
    E-mail: doug.axel@usdoj.gov

KATHLEEN McGOVERN
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
kathleen.mcgovern@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 03-620-TJH |
|---|---|---|
| Plaintiff, | ) ) | GOVERNMENT'S OBJECTIONS TO PRE-SENTENCE REPORT, SENTENCING POSITION AND MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K1.1 RE:  JOHN LAURIENTI |
| v. | ) ) | |
| JOHN LAURIENTI, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | MEMORANDUM IN SUPPORT OF ITS MOTION FOR DOWNWARD DEPARTURE [filed under separate cover, UNDER SEAL] |
| | | Sentencing date: August 31, 2009, 2:00 p.m. |
| | | Courtroom:  17, Hon. T.J. Hatter, Jr. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the Fraud Section, Criminal Division,

U.S. Department of Justice, respectfully submits its objections to the Pre-Sentence Investigation Report, sentencing position and motion for downward departure under United States Sentencing Guidelines ("U.S.S.G.") Section 5K1.1 regarding the sentence of defendant John Laurienti.

The government's objections, sentencing position and motion for downward departure are based upon the attached memorandum, the downward departure memorandum filed separately under seal, the files and records of this case, and any evidence and argument that may be adduced at a hearing of this matter.

DATED:   August 19, 2009

                                        Respectfully submitted,

                                        STEVEN A. TYRRELL
                                        Chief, Fraud Section

                                        _____
                                        KATHLEEN McGOVERN
                                        Assistant Chief

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

## I. INTRODUCTION

The government objects to the Pre-Sentence Investigation Report ("PSR") to the extent that the sentence recommended by the PSR, and certain factors upon which that recommendation is based, are inconsistent with the plea agreement entered between the government and John Laurienti ("J. Laurienti" or "Defendant") in March 2005. In addition, the government moves the Court for a downward departure under U.S.S.G. Section 5K1.1, based upon the substantial assistance that J. Laurienti has provided to the government, as further described herein and in the government's memorandum in support of its motion for downward departure ("downward departure memo") concurrently filed under seal.

Based upon the reasons explained below and in the concurrently-filed downward departure memo, the government respectfully requests that the Court find J. Laurienti's total offense level to be **17**, resulting in a sentencing range of **24 - 30 months.**

## II. OFFENSE CONDUCT

Defendant was the primary organizer and leader of a scheme in which he and others engaged, for the purpose of self-enrichment, in a conspiracy to conduct fraudulent securities sales practices artificially to stimulate market activity in securities known as "house stocks".

In 1998-2001, Hampton Porter Investment Bankers, LLP ("Hampton Porter") was a small retail broker-dealer with a single office in San Diego, California. The co-conspirators played different roles: defendants J. Laurienti (brother of Bryan Laurienti) and Greg Walker owned the firm, and Jim Green managed

the brokers.  J. Laurienti managed Hampton Porter's operations, and directed the activities of Green, the traders and retail brokers, including trial defendants Bryan Laurienti, David Montesano, Curtiss Parker and Donald Samaria.  J. Laurienti left Hampton Porter on October 31, 1999.

The fraudulent scheme focused on artificially-driven sales activity in house stocks, which were, with one exception, thinly-traded, speculative securities.  The house stocks at the center of the scheme were the securities of EMB Corporation (EMBU), NetUSA (NTSA), Virtual Technologies (VTCO) and EnPointe Technologies (ENPT) (which was more widely traded than the others).

J. Laurienti negotiated purported "investment banking agreements" with the house stock issuers (except ENPT, for which Hampton Porter acted as a market maker) by which, in lieu of cash compensation, Hampton Porter received some of the house stocks at a significantly discounted price.  The primary purpose of these agreements was to unleash the brokers to sell house stocks to their clients so that the price would increase.  Hampton Porter sold off some of the house stocks and used the proceeds to pay brokers undisclosed bonus commissions to sell house stocks.

Green and J. Laurienti periodically convened broker meetings at which they touted the house stocks and announced to their co-defendants the bonus commissions to be paid for selling house stocks.  With the knowledge and agreement of J. Laurienti, Green and the Hampton Porter brokers sold house stocks to clients through a variety of false, misleading, and deceptive practices, including, but not limited to, failure to disclose that the firm

2

enforced a "no net sales" policy respecting house stocks.  This policy was enforced by, among other things, the payment of bonus commission on house stocks but not other stocks, the forfeiture of bonus commission if clients sold house stock, and the refusal to execute house stock trades unless the trade could be paired with another trade in a so-called "cross-trade".

Relatedly, J. Laurienti, on occasion, allowed or disallowed firm orders for the sale of house stock based upon his observations of the potential impact of the transaction on the price of the stock.  Furthermore, J. Laurienti and Walker formed an entity known as Time Holdings and, through it, acquired house stock at low prices and, after the price increased due in part to Hampton Porter's sales efforts, sold the stock for a profit.

In prior sentencing briefing, the government submitted a loss calculation based upon analysis of thirty of defendants' former clients whom the government called as witnesses at trial and/or were contacted by investigators or otherwise provided to the government information during the investigation.  See Declaration of Special Agent Scott A.H. Schofield (Doc. No. 552-2, filed on March 23, 2007).  Using this methodology, the grand total house stock loss suffered by the thirty former clients was $4,159,576.[1]  Following supplemental memoranda filed by the government regarding loss, see, e.g., Government's Supplemental Memorandum Re: Restitution Order for Bryan Laurienti (Doc. No. 723, filed on December 4, 2007), on February 12, 2009, the Court issued a final restitution order under seal as to the four trial

---

[1] The government did not include the losses to Adam Gilman and Troy Peters' victims, but did include the losses incurred by trial defendant Michael Losse's clients.

3

defendants, and ordered restitution in the amount of $3,954,009.[2]

## III. THE PARTIES' PLEA AGREEMENT AND OBJECTIONS TO THE PSR

### A. The Plea Agreement

J. Laurienti entered a plea post-indictment, in April 2005. Defendant pleaded guilty to a single count of conspiracy to commit securities fraud. He and the government agreed upon the following sentencing factors using the 2000 edition of the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"): (a) more than one victim (+2), (b) organizer or leader (+4), and (c) loss greater than $2.5 million (+13). The total offense level, subtracting 3 points for acceptance of responsibility, is **22 (41 - 51 months)**.

### B. Objections to PSR

The PSR recommends a total offense level of **25 (57 - 71 months)**, due to a loss figure above $5 million (approximately $5.3 million) and the addition of an enhancement for mass-marketing. The recommended term of incarceration is **60 months.**

While the government acknowledges that the Probation Office is not bound by the parties' plea agreement, the government respectfully objects to the PSR with respect to the mass-marketing enhancement and loss calculation. The government is bound by its plea agreement, which does not include a mass-marketing enhancement and which limits the loss enhancement to +13 (loss greater than $2.5, up to $5 million).

In addition, the government notes that PSR paragraph 31

---

[2] The Court ordered restitution as to twenty-five victims and the four convicted trial defendants as follows: B. Laurienti ($847,094); Montesano ($314,803); Samaria ($930,267); Parker ($91,931); and Parker and Samaria jointly and severally ($1,769,914).

4

refers to money laundering as part of "Offense Conduct". However, J. Laurienti did not admit to this conduct and the government agreed to dismiss the money laundering counts.

### IV.   J. LAURIENTI'S SUBSTANTIAL ASSISTANCE

The relevant factors under U.S.S.G. Section 5K1.1 are (a) the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of same, (b) the truthfulness and completeness of information provided by the defendant, (c) the nature and extent of defendant's assistance, (d) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance, and (e) the timeliness of defendant's assistance. U.S.S.G. § 5K1.1 (2000 ed.).

There is no question that J. Laurienti's assistance has been both significant and useful. His guilty plea a year and a half before trial saved the government substantial time, effort and cost in preparing for the same, and undoubtedly played a role in causing the guilty plea of broker Troy Peters. Although J. Laurienti was not asked to testify at trial, he cooperated against his co-defendants. Specifically, J. Laurienti met with the government, provided valuable background information, and responded to specific questions that arose prior to and during trial, particularly during the defense case. Some of his conspirators, such as the trial defendants, may be considered in some ways equally culpable as J. Laurienti because they dealt directly with, and made misrepresentations repeatedly to, the victim-investors.

Defendant has cooperated in other important ways, which the

government describes in a separately-filed memorandum, submitted under seal.

Based upon J. Laurienti's substantial assistance and assuming a total offense level of **22** as set forth in the plea agreement, the government moves pursuant to U.S.S.G. Section 5K1.1 for a **5 level** departure to an offense level of **17**, resulting in a sentencing range of **24 - 30 months**.

**V.    SECTION 3553(a) FACTORS**

Title 18, Section 3553(a) lists certain factors for the court's consideration in imposing sentence. In summary form, those factors are (a) the nature and circumstances of the offense; (b) the history and characteristics of the defendant; (c) the need for the sentence to (i) reflect the seriousness of the offense, promote respect for the law and provide just punishment, (ii) afford deterrence, (iii) protect the public from further crimes by defendant, and (iv) provide defendant with necessary education or other correctional treatment; (d) the kinds of sentences and Guidelines sentencing ranges available; (e) policy statements of the Sentencing Commission; (f) the need to avoid unwarranted sentence disparities among convicted defendants with similar records; and (g) the need to provide restitution. 18 U.S.C. § 3553(a).

Under the first of these factors, the government notes that although J. Laurienti was an owner of Hampton Porter and the primary organizer of the scheme, he did not have direct and daily control over his conspirators after leaving the firm in October 1999.

The Court should also consider Laurienti's history and

characteristics during the almost ten years since he committed the crimes to which he pleaded guilty. As far the government is aware, Laurienti has not committed any other offenses since that time.

Furthermore, in order to avoid unwarranted sentencing disparities, it is appropriate that J. Laurienti's sentence should be greater than the highest other cooperating defendant's sentence (Walker, 18 months), and equal to or lower than the lowest convicted trial defendant's sentence (Montesano, 30 months). The government believes that, given J. Laurienti's role in the scheme as well as his substantial cooperation, the principles of proportionality militate in favor of a sentence within the range of **24 to 30 months**.

## VI. CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court sentence J. Laurienti in accordance with the government's sentencing position and motion for downward departure.

DATED: August 19, 2009          Respectfully submitted,

                                STEVEN A. TYRRELL,
                                Chief, Fraud Section


                                _____
                                KATHLEEN McGOVERN
                                Trial Attorney

                                Fraud Section, Criminal Division
                                U.S. Department of Justice

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA